The next case called Oral Argument is People v. Sands May it please the Court. My name is Amanda Horner from the Office of the State Appellate Defender, and I represent Mr. Ronald Sands, the defendant appellant in this case. Your Honors, Mr. Sands wishes to stand on his brief for Issue No. 2, so this argument will focus exclusively on Issue No. 1. At this time, Your Honors, Mr. Sands respectfully requests that this Court reverse the trial court's ruling and remand for a new trial, because the trial court erred by failing to consider the issue of self-defense. Your Honors, the trial court should have considered self-defense where there was sufficient fact presented at trial to raise the issue. According to our Supreme Court, in People v. Everett, this burden is minimal. In other words, where the facts on the record are slight that self-defense might have occurred, then the trial court should consider self-defense. In Everett, our Supreme Court laid out five factors to consider in order to determine whether this burden had been met. The defendant's testimony, his intent or motive, any physical altercation between the defendant and the complainant, the wounds suffered by the complainant, and finally, the circumstances surrounding the incident. Now, at trial, Mr. Sands testified that he was unaware of how the complainant suffered from her injuries. But even without his testimony, there was sufficient evidence raised on the record to establish that self-defense might be an issue. What about the fact that he didn't testify to it? Your Honor, our Supreme Court has held that even where the defendant's testimony is incompatible with the theory of self-defense, that those instructions should still be given to juries. For example, in People v. Joiner, the defendant testified at trial that he accidentally shot the decedent, that a gun went off, it was an accident, he never intended to harm the decedent. In contrast, evidence at trial suggested that he, in self-defense, shot the decedent, that he purposefully aimed the weapon and pulled the trigger after an altercation. Now, the trial court in that particular case denied instructions on self-defense. And our Supreme Court reversed, finding that even where the defense's own testimony is incompatible, if there are facts on the record to raise the issue, then the defendant is still entitled to have that issue considered. Does it undermine or does it affect your position that the trial court in its findings indicated that it didn't believe the defendant? Don't you have a credibility problem on all these arguments? Well, certainly, Your Honor. There is a credibility problem for Mr. Sands if he asserts he didn't harm the complainant. But, Your Honor, Mr. Sands' assertion is even without his testimony, even if the trial court found that he was not credible, the state presented sufficient evidence to raise the issue. In other words, Your Honor, once the trial court found Mr. Sands not credible, it then obviously found that Mr. Sands caused the harm to the complainant. At that point, it was incumbent upon the trial court to determine whether or not those injuries were caused under self-defense. And the reason for that, Your Honor, is because, again, under the Everett factors, there was sufficient evidence on the record presented by someone other than the defendant that self-defense occurred. For example, the complainant in her testimony stated that she made the first physical contact between the defendant and herself. She struck him over the head with a coffee pot. Now, certainly, her motivation might have been questioned by the trial court, but at that point, it could have been inferred that any injuries she suffered was a result of the defendant warding off an attack. Now, whether or not the trial court determined that that was self-defense was not decided. And that, Your Honors, is the issue here. Not whether self-defense actually occurred, but whether or not the trial court considered self-defense at all. Your Honors, Mr. Sands recognizes that the trial court is the ultimate trier of fact. And he's not here today to ask this court to determine what witnesses were more credible. He's not here to ask you to determine whether or not self-defense actually existed. Instead, the very narrow issue that Mr. Sands brings to this court today is whether or not the trial court erred by failing to consider self-defense at all. Now, Your Honors, in addition to the intent and motive under the Everett factors, the Supreme Court also noted that one should consider the physical interactions between the parties. Now, prior to the complainant striking Mr. Sands over the head with a coffee pot, there had been another altercation that night. They had been involved in a verbal altercation in which the complainant physically removed the defendant from the home they shared together. Now, according to Mr. Sands, after he came back home, there was a second verbal altercation. And it was at this point that the complainant admitted that she struck Mr. Sands over the head with a coffee pot. Now, I understand, didn't he break the door down to get back in? Well, certainly, Your Honor, that was in dispute at trial. Mr. Sands, who also lived in the home. They said there only was one key. There was one key. But it wasn't out there. Yes, Your Honor. I believe Mr. Sands testified that he was able to get into the home, that perhaps the door wasn't locked. But in any event, it was a home that he shared with the complainant, and it was in dispute at trial as to whether or not he was able to get back in the house, you know, by opening the door, whether or not the door had to be kicked in. He testified that the kicked-in door had occurred some prior time, Your Honor. And was there any evidence as to the description of this coffee pot? Was it a glass one? Was it aluminum? It was. A big one or a small one? The description in the record was that it was an antique coffee pot. That doesn't tell you anything? Not really. I believe from the description that it was a metal coffee pot, and there are photographs in the record. Oh, okay. In addition to considering the physical interaction between the defendant and the complainant, as well as the intent and the motive, the trial court also needed to consider the wounds suffered by the complainant. Now, Your Honor, when we talk about striking someone over the head with a hammer, it conjures up all sorts of life-threatening injuries. And Mr. Sands doesn't mean to negate the injuries that were suffered by the complainant. But quite frankly, it was a small wound that required three staples and a bruise on the wrist. Certainly something that's unfortunate. But, Your Honors, this is not the life-threatening injuries that are normally caused when someone is struck over the head with a hammer. Unfortunately, the trial court seemed to be very hung up on this. It noted that the defendant was lucky he wasn't on trial for murder and that he brought a hammer to a coffee pot. But, Your Honors, for self-defense, the issue isn't the type of weapon it was used. It was whether or not the wound was proportionate to the fence used by the initial aggressor. And Mr. Sands asserts that in this case, it was. In fact, the complainant testified that when she picked up the coffee pot, there was a hammer laying in the near vicinity. So it can be inferred that Mr. Sands, after being struck, picked up the hammer to ward off the attack. If we assume that he didn't, in fact, cause these wounds to the complainant. Finally, Your Honors, under the Everett test, in order to raise self-defense, the trial court should have also considered the circumstances surrounding the incident. In this case, the record indicates that it was Mr. Sands who called 911, who summoned the police to the house, was cooperative, and invited them in. It was the complainant who testified at trial that she called police, but there's no record for that she had a neighbor call police for her. But there was no record of this call. Further, the police testified that it was the complainant who was irate at the scene. And it's also important to note that it's the complainant who was on probation, and had she been arrested or convicted of a subsequent domestic battery charge, might have had that probation revoked. Don't all these go to credibility again? They do, Your Honor, absolutely. So if the trial court was considering self-defense, the trial court could use that in order to determine whether or not self-defense occurred. But in this case, the trial court never considered self-defense. Did the defendant testify about self-defense? The defendant testified that he was unaware of how the injuries occurred, Your Honor. Do you think he has to testify about self-defense if he's going to testify at all? Our Supreme Court has noted in multiple cases that he's not required to give testimony that's consistent with all the defense theories present. So no, Your Honor, he was not required to testify about self-defense. In other words, if the state had sufficient evidence to bring up the issue of self-defense, then the defendant is allowed to rely on that evidence just as the state is. In other words, the judge looks at the evidence as a whole. And if that evidence in and of itself establishes that self-defense is an issue, then the defendant does not have to testify about that. You quoted and used in your brief the sentence about I was waiting for the defendant to bring up the self-defense. Excuse me, my allergies are wiping out my defenses. In the sentence before that, he indicates that he has found that there is no legal justification for the defendant's acts. Doesn't that indicate that the court, as in prior effect, did consider self-defense and found that any evidence on the record that could be relevant to self-defense was insufficient? No, Your Honor. The defendant doesn't think so for several reasons. First, I think that the judge's statement that he was waiting on the defendant to talk about self-defense is very telling. Essentially, once that evidence is brought up, it's no longer the burden of the defendant to discuss self-defense. Now, that would go to credibility. And if the judge finds that he didn't testify and that therefore made his testimony not credible, then certainly that's an issue for the judge to consider. But in essence, in this statement, the judge is essentially shifting the burden to the defendant to explain how the wounds occurred on the complainant. And that's simply not true. In addition, he notes that there was no justification given the fact that under Mr. Sand's circumstances, he might have been the initial aggressor. And I think the record is very clear that it was the complainant who struck Mr. Sand over the head first with the coffee pot. So we would argue that this is, in fact, a misstatement of the facts on the record. In addition, Your Honor, that these two things coupled together does not indicate that the trial court actually considered self-defense. Thank you, Your Honor. Thank you, counsel. Counsel? Good morning, Your Honor. May the police be with you. The defendant states that the defendant testified he was unaware how the victim suffered the injury. Well, it's a little more than that. The defendant testified that he didn't hit or do anything to the victim at all. So, in essence, the defendant on the witness stand rejected or repudiated any kind of self-defense action. Now, I guess before we get into the question of what were the trial court's obligations here for an unassertive self-defense plan, why don't we take a look at what the facts that involve a self-defense claim implicate here. The only evidence comes from the state's victim. The defendant, as I stated, testified and indicated that he had not done anything to the victim, denied striking her. So the self-defense claim is predicated solely upon the victim's testimony that she had swung a coffee pot at the defendant. But let's delve into those facts a little bit deeper. But first of all, to frame this, let's look at what the statute has to justify the use of force. Now, the trial court had indicated in this case, although it did not find that the victim had suffered great bodily harm, it did indicate that the defendant's action of swinging a hammer and striking the victim was the type of action that could have caused great bodily harm to the victim. So I think it's probably germane to look at the justifiable use of force statute under those circumstances. A person is justified in the use of force which is intended or likely to cause death or great bodily harm, only if you reasonably believe such force is necessary to prevent death or great bodily harm to himself. Now, we only have the victim's testimony here. The victim testified that she had argued with the defendant earlier in the evening. They had an altercation. She wound up basically kicking him out of the apartment. She went to the bedroom and fell asleep. When she woke up, the defendant was standing above her, screaming, I think, or yelling is what she said. She made the decision at that point to try to get away from the defendant. So she was at this point retreating from the defendant who was following her. And by the victim's testimony, was acting in a threatening enough fashion that she believed that the defendant was about to strike her. So she grabbed a coffee pot, swung it at her, and hit her. But at this point, she was retreating from the defendant, not attacking him. The defendant, in response to that, then grabbed a hammer and began to pummel the victim repeatedly. The victim had actually at one point dropped the coffee pot and was shielding herself from the defendant's blows, and he still continued to hit her with the hammer. That's the self-defense plan. So I guess before we even get into the question of what the trial court's obligations were to, to sort of sui sponte decide whether the state had disproven an unraised self-defense plan. But you raised it. The state raised the self-defense. They did not. They did not. No one raised it. It says the state presented evidence that Mr. Sands acted in self-defense. The state presented evidence where the defendant could have raised a self-defense plan, or at least attempted to assert a self-defense plan. I'm not saying it's a valid one. I'm not saying it's one that the defendant would have been entitled to an instruction upon. And I guess that's the point I'm getting to here is that… She testified she swung something at him. Correct. While she was retreating to get away from the victim, from the defendant, who was acting in a threatening manner, only swung once. My argument is that the response was grossly disproportionate to the provocation. We're talking about a great bodily harm here. Necessary to prevent death at great bodily harm, one swing with a coffee pot while she's trying to get away from the defendant. This is the only evidence that there is. Okay, so she was not an aggressor in that sense of it. It was in her perspective that she was acting in self-defense at that point. Justifiably or not, under those circumstances, that's what the witnesses were about. So I think that before we get to the question of whether or not what the trial court's obligations were, we have to decide whether or not there's even really a self-defense claim here that would matter. Because if there's not, then it's largely irrelevant whether the court should have considered this on its own accord or not. Now, I guess then moving ahead to this, I would agree with the defendant on a lot of things that the defense counsel argues up here, in the sense of, you know, what are the elements of a self-defense claim? And I agree with the description of the Everett case. There's a functional distinction here that this court has to keep in mind. Does that mean Everett? And in other cases similar to that, the defendant asked for the self-defense instruction and admitted to the acts underlying the crime itself. So, you know, we have an abundance of case law that says that in an affirmative defense, felt like self-defense, the defendant is, in effect, admitting to the acts of the crime. Okay, and then it becomes whether or not it's a justifiable use of force. But here the defendant testified and repudiated self-defense. The defendant did not indicate he was going to raise self-defense prior to trial. He did not raise self-defense at the trial itself. And the defendant testified and claimed that he did not do anything to the victim. So, the defendant's proposition here is notwithstanding all of that, notwithstanding whether the defendant, an obvious position of the defendant from a strategic trial strategy standpoint, that there's no self-defense involved here, that the court should have suba sponte raised or considered or bandaged or, I guess in the defendant's view, found the existence of self-defense. Now, it's our position that really, in essence, what's happened here is akin to a waiver. The defendant had ample opportunity to make a self-defense claim. Didn't do it prior to trial, at trial, or during the defendant's testimony itself. So, you know, the court did make mention of the fact of that. And I believe Justice Goldner sort of alluded to earlier. It indicated that it wasn't going to buy it anyway. But in any event, it did, I agree with the defendant on this point, the court didn't really actually take the self-defense argument by the mantle because it wasn't raised. Are any of the cases that you rely upon cases in which the waiver issue involved a bench trial as opposed to a jury trial? No, they're all jury trials. And it's something of a court that we have a jury trial here, excuse me, a bench trial here and a jury trial. But I do think that when you consider what a court has to do for the trier of fact, and here the court is sitting as a trier of fact in lieu of the jury, what type of instructions is the jury entitled to? And that's why I cite the Chapman case. In the Chapman case, the defendant had testified. The defendant had actually, excuse me, denied any act of self-defense. The state nonetheless asked for the instruction and the court granted it based upon evidence that had come out of the state's case. The second district wound up reversing that, saying that, you know, unless you actually admit to the commission of the crime, where in this case the defendant denied it. And number two, to give a justifiable use of force instruction to a jury where the defendant had testified and denied it would be, you know, immediately confusing to a jury in trying to assess the claim. Now, I know a judge isn't going to have that kind of confusion, but I think the broader point that's being made there is that if a jury is a trier of fact, isn't going to be allowed to consider a self-defense claim under those circumstances, where is there a freestanding legal constitutional obligation for a circuit court judge to bring it up to respond to a defense trial under almost identical circumstances? If the defendant had not testified, and if the defendant said, well, this is what the state's evidence is, and we're going to assert a self-defense claim in a defense trial, it might be a different argument here, because I do agree with the defendant that the state's evidence alone can justify an instruction or can justify the use of the defense, but that's not what we have here. It's obvious from the beginning to the end that the defendant wasn't asserting, and they had no intention of asserting a self-defense claim. If that is the defendant's all-or-nothing defense, then what more is the circuit court expected to or obligated to? And I want to make sure that we don't conflate the concepts of what a court needs to know in order for the defendant to assert a self-defense claim in what the court has to do on its own, when that assertion is never made. These are two entirely different concepts. And in this case, the defendant never made, never raised it, and I argued in terms of waiver because I believe the defendant made that conscious decision from the get-go not to assert self-defense. And this defense is that he didn't do it. Well, either he did or he didn't do it. So there's really kind of two concepts here for the court to consider. Number one, that even if the defendant had, even if the court had sort of considered, or whether it had come up before the court that it should consider the self-defense claim, it wasn't really going to be a valid claim that would have been brought by the trial court anyway. If it had been a jury trial, I don't even know if the jury would have consulted on it because of the grossly disproportionate nature of the evidence in terms of the defendant's retaliation. Second of all, I don't believe there's a legal obligation for the court to consider a self-defense claim where the defendant has not only not raised it, but repudiated it in his testimony. So under those circumstances, I believe that the, and I stand in my second argument as well,  Any questions? Thank you, Your Honor. Thank you, Counsel. Your Honors, Mr. Sands has just one point on rebuttal. The State knows that Mr. Sands intentionally waives this right. However, a waiver is an intentional relinquishment of a right. And the State cites to People v. Chatham to make this distinction. But in Chatham, it was clear that the defendant did not want the self-defense jury instruction. Nor was it a jury trial, so that he had the opportunity to make that clear. Mr. Sands did not. He wasn't presented with the opportunity to waive this through jury instructions. But in Chatham, the defendant specifically said, we don't want self-defense to be given to the jury. He objected to that. It's an intentional relinquishment of a right. Mr. Sands was entitled to have the trial court consider all the evidence before it. He cannot be said to waive something when he was entitled to have the trial court consider both the State's evidence and the defendant's evidence. And for this reason, Your Honor, Mr. Sands respectfully requests that this court reverse the trial court's findings and remand it for a new policy. Thank you. We appreciate the briefs and arguments from counsel. We'll take the case under advisory review shortly.